## TENNESSEE LODGE *v.* ALICE E. LADD *et al.*

LIFE INSURANCE. *Benefit certificate. Transfer thereof.* By the charter of the Knights of Honor, the benefit fund of a member shall be paid "as he may direct," and by the constitution, he may direct the payment by will, entry in the record book, or by a benefit certificate. *Held,* that the direction, by benefit certificate, might be changed, unless there has been a valid executed transfer of the certificate.

### FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

SLEMMONS for Complainant.

ESTELL for defendants.

COOPER, J., delivered the opinion of the court.

Bill of interpleader by the Tennessee Lodge No. 20, of Knights of Honor, against Alice E. Ladd, the widow, and Jessie Alice Ladd, the infant daughter of W. E. Ladd, a deceased member of the order, to have determined to which one of the defendants the benefit fund of the deceased should be paid. The chancellor decided in favor of the daughter, and the wife appealed.

The charter of the Knights of Honor, granted by the Legislature of the State of Kentucky, provides, by its second section, that the objects of the corporation, among other things, shall be "to promote benevolence and charity by establishing a widow's and orphan's benefit fund, from which, on the satisfactory evidence of the death of a member of the corporation, who has complied with its lawful requirements, a sum not exceeding $5,000 shall be paid to his family, or as he may direct." By the constitution of the order, article 7, provision is made for the creation of the widow's and orphan's benefit fund, by dues, to be paid by the member, and for the payment out of this fund of $2,000, on the death of a brother member of the order. Sec. 8 of this article reads thus: "Any brother may cause to be entered upon the Reporter's record book a direction to whom his benefits shall be paid, and he shall pay for such entry a fee of not

less than twenty cents; he may, at any time, cause such entry to be changed upon paying a like fee, or he may have a benefit certificate issued to him upon paying the fees prescribed by the by-laws of his lodge for the same. All such entries shall be made by the personal direction of the brother, and be read in open lodge. In case no direction is made by a brother, either by will, entry or benefit certificate, the lodge may cause the same to be paid to the person or persons entitled thereto."

W. E. Ladd, as a member of the Lodge No. 20, on the 8th of May, 1875, received a benefit certificate of the usual form, properly signed and authenticated, certifying that he was a beneficiary member of the lodge in good standing; that, in accordance with and under the provisions of the laws governing the order, the sum of $2,000 would be paid by the Supreme Lodge Knights of Honor of the World, as a benefit, upon due notice of his death, and the surrender of the certificate to such person or persons as he may, by will or entry on the record book of the lodge, or, on the face of the certificate, direct the same to be paid. In the lower left-hand corner of the certificate was the following printed form:

"To the Officers and Members of the Supreme Lodge Knights of Honor of the World: Brothers— It is my will that the benefit named in this certificate be paid to ———."

This certificate was filled up, without date, by the addition of the words: "My wife, Mrs. Alice E.

Ladd.    Signed by  W.  E.  Ladd;    attested  by  two witnesses."

On the 23d of October, 1879, a similar benefit certificate, properly signed and authenticated, was issued to W. E. Ladd, probably on his statement that the first certificate was lost, and the form in the lower left-hand corner was filled up with the words: "My daughter, Jessie Alice Ladd," and signed by W. E. Ladd, again without date, and attested by two witnesses.

It is proved by Mrs. Alice E. Ladd that her husband had taken out an original certificate as a member of another benevolent association for her benefit, which was afterwards changed for the benefit of the daughter; that he had taken out an original certificate in still another order for the benefit of herself and daughter, which he subsequently had changed for the benefit of the daughter alone.    These certificates, and the original certificate in controversy, were put by the husband in a drawer in which he kept his valuable papers, which drawer was never locked.    She found the first of the certificates in controversy, after her husband's death, not in the drawer, but elsewhere among some letters and papers.    She was asked to state, as near as she could, the time when she first saw that policy, and replies: "I think it was very soon after the policy was taken out, but I cannot now state from memory when that was."

Being asked to state what her husband said when he brought it home, she says: "As near as I can remember, he brought them home and showed them

to me, and said that they were my papers, and I must take care of them, as I would need them in case of his death; that they were a life insurance policy. He then put them in a drawer. So far as I know, it was never moved from the drawer except in moving, and then no one handled them but myself." Upon cross-examination, she says her husband put the paper in the drawer himself, "and told me to remember where the papers were; that they were papers I would want in case of his death."

Being then asked where her husband kept his certificates of other lodges, she answers: "They were all kept together." She was then asked: "Did your husband make the same remark to you, or any remark at all, in regard to these other certificates?" Her reply was: "Well, there were a number of them altogether, and when he made this remark, he did not refer to any one in particular."

By the charter of the Knights of Honor, as we have seen, the benefit fund of a member "shall be paid to his family, or as he may direct," and by the constitution he may direct the payment "by will, entry on the Reporter's record book, or benefit certificate." Of course, a direction by will may be changed at any time before the death of the party, and the constitution of the order expressly provides for a similar change in the case of an entry on the record book. The benefit certificate only certifies the fact that the member named is entitled to the benefit fund, and the form in the lower left-hand corner, when filled up, is only a direction to whom payment is to

be made. There is no reason for supposing that such
a direction in the certificate should have any other
effect than a direction on the record book, or a will.
In fact, the form is a will. "It is my will" that
the benefit shall be made to the person named. Such
an instrument, attested by two witnesses, might be
proved as a will of the fund under our law. *McLean*
v. *McLean*, 6 Hum., 452. No doubt the language
was adopted for the express purpose of obviating a
difficulty which might arise upon a simple direction
as to whether it could have effect as an assignment
without delivery. The execution of such an instru-
ment, without more, would not divest the member of
his interest in the fund, nor vest the fund in the
person to whom it is directed to be paid. It would
still be the fund of the member, and subject to his
disposal.

This court has held that a husband who takes out
a policy of insurance on his life in his own name, is
entitled to treat it as his property and dispose of it
by will. *Rison* v. *Wilkerson*, 3 Sneed, 565; *Williams*
v. *Carson*, 2 Tenn. Ch., 269, affirmed on appeal. If
he take the policy in the name of his wife, intending
to give her the benefit of it, she would thereby ac-
quire a vested interest of which he could not after-
wards deprive her. *Gosling* v. *Caldwell*, 1 Lea, 454.
The same rule would undoubtedly apply where he
voluntarily assigned to his wife, by an executed con-
tract, a policy taken out payable to himself. *Fortescue*
v. *Barrett*, 3 M. and F., 36. A benefit certificate,
like the one before us, would be governed by the

same rule, and would remain the property of the husband, subject to disposition by will unless previously assigned for a valuable consideration, or voluntarily transferred by an executed contract. *Weil* v. *Trafford*, 3 Tenn. Ch., 103.

In this view, the "will" of W. E. Ladd, in the direction on the face of the last certificate, would carry the right to his daughter, unless the evidence shows a valid executed transfer to the wife of the first certificate. Her testimony fails, unfortunately, to establish either the necessary intention or the requisite delivery.

There is no error in the decree of the chancellor and it must be affirmed, but the costs will be paid out of the fund.